# EXHIBIT 6

EXHIBIT M

PROFESSIONAL SERVICES

THIS AGREEMENT, made and entered into as of this _18_ day of _April_, 1980, by and between JACOBS WIND ELECTRIC COMPANY, a Delaware corporation, (the "Company") and JACOBS WIND ELECTRIC COMPANY., INC., a Florida corporation ("Jacobs").

WITNESSETH:

WHEREAS, all of the issued and outstanding capital stock of Jacobs is owned by M. L. Jacobs and P. R. Jacobs; and

WHEREAS, Jacobs and its owners have had long and continuous experience in the business of designing, manufacturing and selling wind powered electric generators; and

WHEREAS, the Company desires to retain Jacobs to render professional consulting services with respect to the business and affairs of the Company; and

WHEREAS, Jacobs is willing to accept the engagement offered to it by Company;

NOW, THEREFORE, it is agreed:

I

Scope

During the term of this agreement, Jacobs shall render professional consulting services to the Company by making available to the Company Messrs. M. L. Jacobs and P. R. Jacobs. Throughout the term of this Agreement, Messrs. M. L. Jacobs and P. R. Jacobs shall make themselves available on a full-time basis to perform such tasks as may be requested by the Company from time to time through its directors or properly authorized officers.

II

Term

This Agreement may be terminated at any time effective as of the last day of any calendar month by either party by giving not less than thirty (30) days prior written notice.

III

Performance of Services

Jacobs shall have full discretion in the manner and means of performance of the services to be performed hereunder, within reasonable performance schedules, and to perform such services consistent with the reasonable business needs and requirements of the Company.

IV

Confidentiality

Jacobs shall utilize reasonable efforts in preserving the confidentiality of information in relation to the Company's business which is confidential. However, Jacobs shall be liable to Company only in the event of a willful and material disclosure of such confidential information by Jacobs or its employees. All original material prepared for or with the Company by Jacobs pursuant to the performance of the activities of Jacobs under the terms of this Agreement shall belong to and be the property of the Company unless otherwise specifically agreed in writing. Jacobs will assist the Company in obtaining patents or copyrights on any inventions or works resulting from the professional services to be rendered hereunder.

V

Noncompetition

During the term of this Agreement, neither Jacobs nor M. L. Jacobs or P. R. Jacobs (the "Shareholders") shall engage in the same or any similar line of business as that engaged in by the Company, either for its own account or as a partner, joint venturer, or as an officer, employee, agent or consultant of any person, firm or corporation.

3

Upon termination of this Agreement, as long as the Company is not in default under the terms of this Agreement or any related agreement or undertaking between the Company and Jacobs or the Shareholders, neither Jacobs nor the Shareholders, at any time during a period of twenty-four (24) months following such termination, shall engage within the territory of the United States in the same or a similar line of business as that engaged in by the Company at the time of such termination, either for its or their own account or as a partner or joint venturer, or as an officer, employee, agent or consultant of any firm, person or corporation. Jacobs and the Shareholders shall further refrain for such period from contacting any customers of the Company with respect to products or services competitive with those of the Company at the time of such termination and will not otherwise interfere with the relationship between the Company and its customers.

The foregoing provisions of this article shall be of no further force and effect at such time as the Company shall no longer be actively engaged in the business of manufacturing and selling wind-powered electric generators.

VI

Compensation

A. As compensation for the services to be performed hereunder, Jacobs shall be paid in cash by the Company the amount of $7,916.67 per month for each calendar month this Agreement remains in effect.

4

B.  In addition, the Company shall reimburse Jacobs for all reasonable expenses incurred by it in connection with the performance of the services required under the terms of this Agreement which shall include, but not be limited to, the actual cost of all transportation, meals, and other incidental travel expenses, long distance telephone and telecommunications and the like.

C.  For each month during the term of this Agreement, Jacobs shall submit to the Company an invoice for all ~~services performed hereunder and for all~~ expenses reimbursable by the Company to Jacobs pursuant to the terms of this Agreement.  Such invoice shall be accompanied by copies of receipts and itemized summaries where relevant.  Such invoices shall be paid by the Company within thirty (30) days after receipt.

VII

Notices

All notices, requests, demands and other communications made pursuant to this Agreement shall be in writing, and shall be deemed to have been duly given if delivered personally or mailed by certified or registered mail, postage prepaid, return receipt requested, to:

The Company:
2720 Fernbrook Lane
Plymouth, Minnesota 55441

Jacobs:
Route 13, Box 722
Fort Myers, Florida 33908

5

VIII

Entire Agreement

This Agreement constitutes the entire agreement between the parties and shall supersede and incorporate all previous negotiations, representations, understandings and agreements heretofore made between the parties with respect to the subject matter hereof. There are no understandings or agreements relative hereto which are not fully expressed herein; no amendments, waiver or discharge hereof shall be valid unless the same shall be in writing and executed by the party whose rights are adversely affected thereby.

IX

Governing Law

This Agreement shall be governed by and interpreted, construed and enforced according the the laws of the State of Minnesota.

X

Benefits/Assignments

This Agreement shall insure to the benefit of and shall be binding upon the parties hereto, their respective successors,

representatives and assigns; but neither this Agreement nor any duty, right or responsibility hereunder shall be asignable or otherwise transferable by either party without the express written consent of the other. Any assignment made in contravention of this article shall be void of no force and effect at the option of the nonassigning party.

IN WITNESS WHEREOF, the undersigned have executed this Agreement the day and year first above written.

JACOBS WIND ELECTRIC COMPANY

By _Paul R Jacobs_

Its _Director_

JACOBS WIND ELECTRIC COMPANY, INC.

By _M. L. Jacobs_

Its _President_