# EXHIBIT 8

## PROFESSIONAL SERVICES AGREEMENT
May 24, 1985

This Agreement entered into this 24th day of May, 1985 between EARTH ENERGY SYSTEMS, INC., a Delaware corporation ("Company"), and JACOBS WIND ELECTRIC CO., INC., a Florida corporation ("Jacobs"). The parties agree as follows:

WITNESSETH:

WHEREAS, the parties heretofore entered into a Professional Services Agreement dated October 26, 1984, a copy of which is attached to this Agreement as Exhibit "A"; and

WHEREAS, it is intended that this Agreement supersedes such Professional Services Agreement; and

WHEREAS, Marcellus L. Jacobs and Paul R. Jacobs (Individuals) are employees of Jacobs, this Agreement containing certain undertakings and restrictions dealing with them; and

WHEREAS, Marcellus L. Jacobs and Paul R. Jacobs have affixed their signatures to this Agreement to reflect their assent to the undertakings and agreements dealing with them individually hereunder; and

WHEREAS, Jacobs and its owners, Marcellus L. Jacobs and Paul R. Jacobs, have had long and continuous experience in the business of designing, manufacturing, selling and servicing wind powered electric generators; and

Exhibit "1"

WHEREAS, the Company desires to retain Jacobs to render professional consulting services with respect to certain aspects of the business as assigned Jacobs by the Company; and

WHEREAS, Jacobs is willing to accept the engagement offered by the Company;

NOW, THEREFORE, it is agreed:

I

### Scope

During the term of this Agreement, Jacobs shall render professional consulting services to the Company by making available to the Company Marcellus L. Jacobs and Paul R. Jacobs (the Individuals). Throughout the term of this Agreement, Jacobs shall cause the Individuals to make themselves available on a part-time basis to perform such professional consulting services as may be directed by the Company from time to time through its Chief Executive Officer or his designee. The actual list of agreed-upon projects which will be available for crediting time or expenses under this Agreement is attached hereto as Exhibit "B." Only projects or services to which both the Company and Jacobs can mutually agree shall be recorded on this list. The Company and Jacobs further understand that the degree of or timing of work undertaken by Jacobs from this Exhibit "B" will be, in large part, conditional upon the support, both material and personnel, furnished by the Company, and that this support is not under the control of Jacobs. Rather, the budget for project work listed on Exhibit "B" will be at the discretion of the Company and will include the office space, equipment, secretarial and other personnel services necessary for Jacobs to operate and prepare their consulting reports. If such support is not funded by the Company, Jacobs will be under no obligation to furnish any consulting reports.

II

## Term

This Agreement shall become effective on June 1, 1985, and shall terminate on May 31, 1988, unless sooner terminated as hereinafter provided. At least 6 months prior to the termination the parties will meet and discuss the possible extension of this Agreement.

III

## Termination Options

Jacobs may, upon six (6) months written notice to Company, terminate this Agreement. Such early termination shall serve to relieve Company of most of its financial obligations under this Agreement following date of such termination. Such early termination at the request of Jacobs will not, however, relieve the Company of its indemnity obligations under this Agreement.

Company may, upon six (6) months written notice to Jacobs, terminate all professional consulting services by Jacobs. Following date of such termination, Company will remain obligated to continue basic compensation to Jacobs in accordance with the provisions of this Agreement. All direct payments other than basic compensation to Jacobs will cease as of such earlier termination date. Insurance coverage provided by the Company on behalf of Jacobs or its employees shall continue for the three-year term of this Agreement even if the professional consulting services are terminated by either the Company or Jacobs, in as much as this benefit is, in part, in lieu of remaining payments under the cancelled Agreement dated October 26, 1984.

-3-

## IV

### Performance of Services

Jacobs shall have full discretion in the manner and means of the services to be performed hereunder, within reasonable performance schedules, and to perform such services consistent with the reasonable business needs and requirements of the Company. The work time expended may be project-requirement derived and not a level rate per week or month. Effort in general, and by Marcellus L. Jacobs in particular, will be scheduled at the option of Jacobs. Marcellus L. Jacobs may also spend considerable time at his Florida office and communicate by appropriate means as well as in person. Every effort will be made by coordinating with the Company administration through its Chief Executive Officer or his designee to get the full benefit of time available. The death or disability of either or both Jacobs will not breach this Agreement and Jacobs understands that the Company may elect to insure the Individuals for this term.

Jacobs will dedicate, at most, an aggregate of 1000 hours per year of employees' time to the performance of consulting work covered by this Agreement. Time in excess of this 1000 hours per year can be requested by the Company at a per hour rate of $150.00, but Jacobs retains the discretion to agree to this extra time or the project work requested. For the purposes of this Agreement, a "year" is a twelve month period commencing June 1 and ending the following May 31st.

If the Company requests no work or minimal work in a given year, the basic compensation to Jacobs will remain due and payable. Jacobs has the right to veto any project or time request it may receive from the Company unless listed on Exhibit B as it now exists or is from time to time modified by mutual written consent of the parties.

Given the fact that Marcellus L. Jacobs resides in Florida and Paul R. Jacobs in Minnesota, the hours they record and travel expenses they bill the Company will be computed from their respective residences and include en route time to Company facilities or other locations where their presence has been requested. Time spent by the Individuals or Jacobs as a result of litigation under the indemnity clause of this Agreement or as witnesses will be considered hours of time expended for the purposes of this Agreement.

V

### Confidentiality

Jacobs shall cause the Individuals and its employees to utilize reasonable effort in preserving the confidentiality of information in relation to the Company's business which is confidential. However, Jacobs shall be liable to the Company only in the event of a willful and material disclosure of such confidential information by Jacobs or its employees including, but not limited to, the Individuals. All original material prepared for or with the Company by Jacobs pursuant to the performance of the activities of Jacobs under the terms of this Agreement or prior Agreements shall belong to and be the property of the Company unless otherwise specifically agreed in writing, but Jacobs may retain copies of all such material. It is agreed that historical works or material developed by Jacobs concerning the origins and involvement of the Florida corporation or its predecessor Montana firm, and their employees, in the Wind Energy Industry shall not be considered the property of the Company unless specifically agreed to in writing. Jacobs and its employees, specifically the Individuals, will assist the Company in obtaining patents or copyrights on any inventions or works resulting from the professional services to be rendered hereunder.

## VI

## Noncompetition

During the term of this Agreement, neither Jacobs nor the Individuals (either or both) shall, without specific, written approval of the Company, engage in the same or any similar line of business as that engaged in by the Company, either for its or their own account or as a partner, joint venturer, or as an officer, employee, agent or consultant of any person, firm or corporation.

Upon termination of this Agreement or the earlier termination by the Company of professional consulting services by Jacobs, as long as the Company is not in default under the terms of this Agreement or any related agreement or undertaking between the Company and Jacobs or the Individuals, neither Jacobs nor the Individuals, at any time during a period of six (6) months following such termination, shall engage within the territory of the United States in the manufacture or sale of wind-powered electric generators, either for its or their own account or as a partner or joint venturer, or as an officer, employee, agent or consultant of any firm, person or corporation. Jacobs and the Individuals shall further refrain for such period from contacting any customers of the Company with respect to products or services competitive with those of the Company at the time of such termination and will not otherwise interfere with the relationship between the Company and its customers.

The provisions of this article do not preclude valuation and consulting analysis services for prospective property owners or wind system developers by Jacobs or the Individuals during the term of this Agreement.

-6-

The foregoing provisions of this article shall be of no further force and effect at such time as the Company shall no longer be actively engaged in the business of manufacturing and selling wind-powered electric generators.

## VII

### Indemnity

The Company hereby agrees to indemnify and hold harmless and defend Jacobs and the Individuals from any and all third-party lawsuits against Jacobs and the Individuals in connection with the consulting services performed by them for the Company under this or any prior Agreement(s). The Company, at its sole expense, agrees during the period of this Agreement to continue as insureds on the policy or policies of liability insurance carried by the Company, Jacobs and the Individuals. Further, the Company, at its sole expense, agrees to continue as insureds on the policy or policies of liability insurance carried by the Company, Jacobs and the Individuals for a period of five (5) years after the termination of this Agreement for the purpose of covering liability and expense arising from events occurring during the term of this Agreement and prior agreements between the parties.

## VIII

### Responsibility of Jacobs

The Company hereby acknowledges that Jacobs will use its best efforts and reasonable care in rendering the services to be provided under the terms of this Agreement. The Company hereby agrees that Jacobs and the Individuals will not be

-7-

responsible for any errors or omissions in connection with their consulting services to the Company unless the same are due to gross negligence or willful neglect.

IX

## Compensation

A. As basic compensation for the services to be performed hereunder, Jacobs shall be paid in cash by the Company the amount of $150,000.00, in advance; $75,000.00 representing payment for the first six (6) calendar months of this Agreement and $75,000.00 representing payment for the final six (6) months of the term hereof. The Company shall pay to Jacobs, in cash, in advance, $75,000.00 for each six months for the remainder of the term of this Agreement. Payments shall be included in billing statements and are due on the first of June and the first of December of each year. If this Agreement is terminated for any reason, Jacobs will retain the final six months payment.

B. In addition, the Company shall reimburse Jacobs for all reasonable expenses incurred by it in connection with the performance of the services required under the terms of this Agreement which shall include, but not be limited to, the actual cost of all transportation, meals and other incidental travel expenses, long distance telephone and telecommunications, and the like, incurred on behalf of the Company.

C. For each month during the term of this Agreement, Jacobs shall submit to the Company an invoice for all expenses reimbursible by the Company to Jacobs pursuant to the terms of this Agreement. Such invoice shall be accompanied by copies of receipts and itemized summaries where relevant. Such invoices shall be paid by the Company within thirty (30) days after receipt.

-8-

D. In addition to expense reimbursements and direct compensation outlined above, the Company agrees during the three-year term of this Agreement (even if cancelled by the Company) to continue listing Jacobs as additional insured on the Company's various insurance policies now in force or added later, such listing to include property, automobile, general liability, products liability, errors and omissions liability, and directors and officers ("D&O") liability for the period the Individuals served as officers and directors of the Company. The Company agrees to have its insurers annually provide proof of insurance to Jacobs and to notify Jacobs 60 days in advance of any termination of any of the above-listed insurance or insurance on the Corcoran test site.

E. Jacobs agrees to include under the property and automobile insurance only those Jacobs corporate assets it uses to support this Agreement. In the event of a termination by the Company of the professional services by Jacobs, these insurance benefits will remain in effect for the entire three-year term, until May 31, 1988. The Company agrees to have its insurers annually provide proof of insurance to Jacobs and to notify Jacobs 60 days in advance of any termination of said insurance. The assets to be insured include:

1. Automobiles and Trailers used primarily in Minnesota (Four automobiles and one trailer);

2. Equipment used for Corcoran test site (Insurance coverage on structures used, to remove gap in Homeowner's coverage);

3. Office equipment and computer assets used in support of this Agreement. (Equipment based at Jacobs offices or at Company offices).

As a further level of non-cash compensation to Jacobs, the Company agrees to provide to the Individuals the benefits specified below:

1. Workers' Compensation Insurance;

2. Group Health Insurance (now including PHP) for the Individuals and their Families;

In the event of a termination by the Company of the professional services by Jacobs, the above listed insurance benefits will remain in effect for the full three-year term, until May 31, 1988. The Company agrees to have its insurers annually provide proof of insurance to Jacobs and to notify Jacobs 60 days in advance of any termination of said insurance.

F. Corcoran Wind Plant Test and Evaluation Site Agreement dated January 25, 1984. The Company and Jacobs hereby agree to extend this Site Agreement (attached hereto as Exhibit "C") to run concurrently with this Professional Services Agreement dated May 24, 1985, for the three years indicated, until May 31, 1988, for the as is condition of the improvements and at the same annual payment of $6000.00. Payments are to be paid in six month installments in advance with the same billing statement for the Professional Services Agreement. The Company will furnish suitable Certificates of Insurance to Jacobs evidencing its insurance coverage as per the Site Agreement. Test site projects listed for this Test Site Agreement (Exhibit "C") will be made to conform to the project list developed as Exhibit B to this Agreement. If the Company exercises its option (on six (6) months notice) to provide no support to Jacobs and limits its exposure to paying the basic compensation and insurance benefits, then this Test Site Agreement will be terminated concurrently under the same terms of removal from and cleanup of the Jacobs

-10-

site as specified in Exhibit B to the Site Agreement attached hereto as Exhibit "C." If the Professional Services Agreement runs its entire three years, then the final site cleanup will be deferred to May 31, 1988.

G. As a final level of non-cash payment in lieu of the remaining payments due Jacobs under the cancelled Professional Services Agreement dated October 26, 1984 (Exhibit "A" hereto), the Company grants to Jacobs and the Individuals the paid up license, in perpetuity, to continue using the trademarks registered in the U. S. Patent Office under Number 1,069,282 or variations thereof depicting an early 3 KW size Jacobs wind system with reference to the date 1935, and Number 1,206,629 for the word "Jacobs." Jacobs, as a Florida corporation, has been using said trademarks or variations thereof since its earlier incorporation, and the sale in 1980 to the Company of the rights to the first mark did not specify that Jacobs must cease using the mark. In the interim, the Company has been fully aware of the continued use by Jacobs of the marks and Jacobs letterhead as evidenced by the monthly billings to the Company using Jacobs letterhead (Exhibit "D" attached hereto). The effect of this clause is to clarify this usage by Jacobs of the marks and letterhead and grant its continuance in perpetuity. Jacobs and the Individuals undertake and agree that such trademarks and letterhead will not be used by them in connection with the manufacture or sale of wind energy equipment nor will they be used in such a manner as to weaken their enforcement against third parties unless the Company shall no longer be engaged in the business of selling wind energy equipment.

X

## Notices

All notices, requests, demands and other communications made pursuant to this Agreement shall be in writing, and shall be deemed to have been duly given if delivered

personally or mailed by certified or registered mail, postage prepaid, return receipt requested, to:

The Company:

250 Prairie Center Drive - Suite 390
Eden Prairie, Minnesota   55344

Jacobs:

8020 Strehler Road
Corcoran, Minnesota   55340

## XI

### Entire Agreement

This Agreement constitutes the entire agreement between the parties and shall supersede and incorporate all previous negotiations, representations, understandings and agreements heretofore made between the parties with respect to the subject matter hereof. There are no understandings or agreements relative hereto which are not fully expressed herein; no amendments, waiver or discharge hereof shall be valid unless the same shall be in writing and executed by the party whose rights are adversely affected thereby.

## XII

### Governing Law

This Agreement shall be governed by and interpreted, construed and enforced according to the laws of the State of Minnesota.

## XIII

### Waiver of Claims

Jacobs and the Individuals, upon the full and complete performance of the obligations of the Company hereunder, do waive any and all claims which they may have relating to or arising out of their interest as shareholders of the Company, agree that they are estopped from raising any such claims that they may have, release the Company and all other persons of any liability with respect to such claims, and acknowledge that this waiver and release is for the benefit of and is being relied upon by Optionees, the Company, and other shareholders of the Company.

The Company likewise waives any and all claims which it may have relating to or arising out of the interest of Jacobs and the Individuals as shareholders, officers, directors and consultants to the Company, agrees that it is estopped from raising any such claims that it may have, releases Jacobs, the Individuals and all other persons of any liability with respect to such claims, and acknowledges that this waiver and release is for the benefit of and is being relied upon by Jacobs and the Individuals, Optionees, and other shareholders of the Company.

## XIV
### Benefits/Assignments

This Agreement shall inure to the benefit of and shall be binding upon the parties hereto, their respective successors, representatives and assigns; but neither this Agreement nor any duty, right or responsiblity hereunder shall be assignable or otherwise transferable by either party without the express written consent of the other. Any

-13-

assignment made in contravention of this article shall be void and of no force and effect at the option of the nonassigning party.

IN WITNESS WHEREOF, the undersigned have executed this Agreement the day and year first above written.

EARTH ENERGY SYSTEMS, INC.

By: _____
ROBERT D. SCHMIDT
Its Chief Executive Officer


JACOBS WIND ELECTRIC CO., INC.

By: _____
MARCELLUS L. JACOBS
Its President

By: _____
PAUL R. JACOBS
Its Vice-President