# EXHIBIT 9

## AGREEMENT

THIS AGREEMENT is entered into this _15_ day of _December_ 1986, by and between Earth Energy Systems, Inc., hereinafter referred to as EESI, and Wind Turbine Industries, Corp., hereinafter referred to as WTIC.

WHEREAS, EESI has undertaken the development of wind-generating systems, and

WHEREAS, the principals of WTIC have been involved as contract vendors for various technology and component parts for said systems, and

WHEREAS, EESI desires to have future warranty and product acquisition covered by an outside vendor, and

WHEREAS, the past association of EESI and WTIC and its principals has demonstrated capability to service existing products and customers, and

WHEREAS, EESI and WTIC have previously entered into an Agreement dated May 20, 1986 (the "Agreement to Purchase") covering the 50 kw wind turbine system and its components (the "50 KW SYSTEM") and certain other matters.

NOW, THEREFORE, in consideration of the mutual covenants contained herein, the parties agree as follows:

### ARTICLE I.

### SALE OF THE 50 KW SYSTEM

1.01 Paragraph number 1 of the Agreement to Purchase is amended in its entirety to read as follows:

> "EESI hereby sells and conveys to WTIC all of its right, title, and interest in and to the 50 KW SYSTEM, including the DC to AC inverter utilized in association therewith. This sale is to include all patentable rights, trade secrets, and technology, if any, with the understanding that WTIC will undertake development of the 50 KW SYSTEM to a proven marketable product. This undertaking is understood by and between the parties to be without any further obligation for support or funding by EESI."

-2-

1.02  All other provisions of the Agreement to Purchase shall remain in effect in accordance with their terms, except that all royalties to be paid for work done or sales made from the date of this Agreement into the future are hereby waived by EESI.  All royalties earned prior to the date of this Agreement shall be paid in accordance with the terms of the Agreement to Purchase.

## ARTICLE II.

### SALE OF THE 10-20 KW SYSTEMS

2.01  EESI has developed and marketed wind turbine generator systems in sizes ranging from 10 to 20 kw capacity (the "10-20 KW SYSTEMS") for sale and distribution in the individual home and farm market.  Under the Agreement to Purchase, Prior Lake Machine, Inc. ("PLMI") agreed to provide parts, service, and dealer support for the 10-20 KW SYSTEMS.  WTIC and PLMI are both corporations controlled by Archie Pavek.  The parties now wish to have WTIC purchase the 10-20 KW SYSTEMS from EESI.

2.02  EESI hereby sells, conveys, and assigns to WTIC all of its rights, title and interest in and to the 10-20 KW SYSTEMS, including all patents listed on Exhibit A, patentable rights, trade secrets, know-how, technology, engineering and manufacturing drawings, all other documentation, and all tools, dies, jigs, molds, and fixtures used to manufacture the 10-20 KW SYSTEMS.

EESI also grants to WTIC all right, title, and interest possessed by EESI in and to the trademarks and trade names listed on Exhibit B (the "Marks") used by EESI and its predecessors in connection with the 10-20 KW SYSTEMS together with the good will associated therewith.

WTIC licenses EESI to use the Marks in conjunction with wind energy products and EESI agrees to reasonable supervision and quality control provisions imposed by WTIC from time to time as to EESI's products marketed under the Marks.  No warranty as to rights to exclusive use of the Mark with respect to third parties is given by EESI hereunder.

2.03  EESI hereby sells, conveys, and delivers to WTIC all of its right, title, and interest in and to the following parts and materials:

-3-

2.03.1  All parts now in the possession of PLMI, as identified by an inventory dated April 17, 1986 (a copy attached hereto) plus the later consignments shipped to PLMI, which parts are used in providing service to dealers of the 10-20 KW systems.

2.03.2  Twenty-two (22) complete stub tower units for 20 KW wind turbines. The stub towers include the inverters, choke, and other subcomponents incorporated in such stub towers, but exclude towers and blades.

2.03.3  Sixty-six (66) completed blades for 20 KW wind turbines, which are at incomplete stages of completion and finishing. The blades are located in California and EESI shall be responsible for completing and crating of the blades. WTIC shall be responsible for the shipping of the blades from California to Prior Lake, Minnesota.

2.03.4  A complete test stand allowing for stub tower and electronic component testing of 20 KW wind turbine units.

2.03.5  All tower components presently located at Bartec Industry in Orange, California. EESI shall be responsible for payment of all storage costs incurred prior to November 1, 1986. WTIC shall be responsible for all storage or disposition costs incurred on and after November 1, 1986.

2.04  EESI retains a perpetual, royalty-free, non-exclusive license (and the right to grant sub-licenses thereunder) to make, use, and sell 10-20 KW SYSTEMS (and the know-how, patents, trade secrets, drawings, documents, or other technology related thereto) for use in connection with wind farms, which are defined to mean any arrangements of wind turbines intended to produce electrical power for sale and not for direct consumption by the owner of the wind turbines.

As part consideration of this license, EESI agrees that it will supply copies of all Engineering Change Orders for any and all technical improvements or modifications to the 10-20 KW SYSTEMS as they are developed through the continuing program involving wind farm projects maintained, serviced, repaired, or developed by EESI. Furthermore, in exchange for the above-referenced technical assistance from EESI, WTIC agrees to provide EESI with copies of documentation relating to any improvements or modifications to the 10-20KW SYSTEMS that WTIC develops.

—4—

The parties agree that they will execute a separate written document relating to the license referred to in this Article 2.04.

2.05 The Parties agree that their obligations under warranties for the 10-20 KW SYSTEMS shall be as follows:

    2.05.1 EESI hereby assigns to WTIC and WTIC hereby assumes responsibility for providing and completing all work required under warranties on all 10-20 KW SYSTEMS currently subject to the express warranties provided upon the sale of such systems. WTIC assumes responsibility only for the express warranties on the systems sold and does not assume any responsibilities for non-standard warranties unique to any particular sale. The items covered by the express warranty are set forth in the attached Exhibit E, which is incorporated by reference herein.

    2.05.2 WTIC reaffirms that PLMI will continue providing dealer support for the 10-20 KW SYSTEMS as provided in paragraph 12 of the Agreement to Purchase.

    2.05.3 All claims and litigation, arising from the express warranties, made on or before the date of this Agreement or arising from warranty work performed by EESI prior to the date of this Agreement shall be the responsibility of EESI. All non-warranty claims made based on units sold by EESI prior to the date of this Agreement shall be the responsibility of EESI. EESI shall indemnify and hold harmless WTIC from all such claims and litigation.

    2.05.4 All claims and litigation arising from all warranty work performed by WTIC, all dealer support service provided by PLMI, and all 10-20 KW SYSTEMS sold or manufactured by WTIC shall be the responsibility of WTIC and WTIC shall indemnify and hold harmless EESI from all such claims and litigation.

-5-

## ARTICLE III.

### BERMUDA PROPERTY

On condition that all required consents, if any, are obtained, the Parties agree as follows:

3.01  EESI hereby sells, conveys, and delivers to WTIC all of its right, title and interest to two 20 KW wind turbine units located at the Navy Tudor Hill Laboratory in Bermuda.

3.02  EESI hereby assigns to WTIC, all of its right, title, and interest in and to those certain lease contracts with the United States Navy pertaining to the 20 KW units referred to above.  WTIC shall assume all responsibilities of EESI under said lease contracts.

3.03  EESI and WTIC specifically agree that, in consideration for the assignments and assumptions contained in this Article, WTIC shall have all rights to receive revenue produced by the lease contracts including any income obtained under an option agreement in the event the option is exercised by the United States Navy.

## ARTICLE IV.

### PARTS STORAGE

WTIC agrees to provide storage for certain parts owned by EESI in accordance with the following terms:

4.01  EESI owns certain parts, as listed in Exhibits C and D attached hereto (the "Wind Farm Parts") used in connection with the maintenance and operation of wind farm projects of EESI. At the direction of EESI, WTIC will transport the wind farm parts from their present location in Mankato, Minnesota (the "Mankato Facility") to a storage facility in Prior Lake, Minnesota (the "Prior Lake Facility").

4.02  If any parts or materials remain in the Mankato Facility after removal of the Wind Farm Parts pursuant to Article 4.01, WTIC shall have right of first refusal to purchase such remaining parts and materials from EESI at the higher of the bids received for the parts from two third party scrap dealers.

-6-

4.03  As sole consideration for the storage of the Wind Farm Parts and the other obligations of WTIC under this Article IV., EESI hereby grants WTIC the right, exercisable on July 1, 1987, to purchase of the Wind Farm Parts listed on Exhibit D for a total purchase price of $100,000 (the "Purchase Option").

4.04  WTIC shall give EESI notice of its intent to exercise the Purchase Option at least 30 days prior to July 1, 1987. Upon exercise of the Purchase Option, WTIC shall deliver to EESI, $50,000 in cash or certified or cashier's check, and a non-interest bearing promissory note in the amount of $50,000 payable on July 1, 1988. Upon receipt of the above payment and note, EESI shall transfer all right, title, and interest to the parts to WTIC.

4.05  WTIC's obligation to provide storage for the Wind Farm Parts not purchased shall continue until December 31, 1988.

## ARTICLE V.

### LICENSE TO HYBRID SYSTEM AND OPTION TO PURCHASE

5.01  EESI has developed and owns a system for production of electricity utilizing wind, solar, diesel, and other generating sources. The system is known as the "Energy Minder Hybrid Power System" (the "Hybrid System").

5.02  EESI hereby grants to WTIC an exclusive license to use, develop, and manufacture the Hybrid System. This license shall include rights to all documentation including engineering and manufacturing shop drawings covering components and subcomponents of the Hybrid System. WTIC shall also receive possession of all present inventory and work units relating to the Hybrid System owned by EESI.

5.03  The license granted herein shall be nonassignable and WTIC shall not sublicense the Hybrid System or any component thereof to any third party. The license shall be for a term of three years from the date of this Agreement.

-7-

5.04 WTIC agrees that, during the term of this license, it shall pay to EESI a royalty of $500 for each Hybrid System sold by WTIC whether as a separate unit or as part of a larger system.

5.05 EESI hereby grants WTIC an option to purchase the Hybrid System for a total purchase price of $150,000 (the "Hybrid Purchase Option"). The Hybrid Purchase Option may be exercised upon not less than 30 and not more than 60 days written notice to EESI at any time prior to the expiration of the term of the license granted herein. All royalty payments made by WTIC to EESI pursuant to this license shall be applied to the purchase price of the option.

## ARTICLE VI.

### INDEMNIFICATION AND INSURANCE

6.01 WTIC agrees to indemnify and hold harmless EESI against any and all loss, damage, claims, or obligations, including reasonable attorney's fees, which arise or result from the negligence of WTIC.

6.02 EESI agrees to indemnify and hold harmless WTIC against any and all loss, damage, claims, or obligations, including reasonable attorney's fees, which arise or result from the negligence of EESI.

6.03 The parties shall maintain commercially reasonable insurance coverage for the above.

6.04 WTIC also agrees to indemnify and hold harmless EESI against any and all loss, damage, claims, or obligations, including reasonable attorney's fees, which arise or result from any failure of WTIC to perform its obligation under Article 2.05 herein.

## ARTICLE VII.

### MISCELLANEOUS

7.01 The Parties hereto agree that this Agreement constitutes the entire agreement of the Parties relative to the subject matter contained herein.

-8-

7.02  This Agreement is made subject to and shall be construed in accordance with the laws of the State of Minnesota.

7.03  Neither EESI nor WTIC may assign any rights or delegate any duties under this Agreement without the prior written consent of the other Party, which approval shall not be unreasonably withheld.

7.04  The Parties agree that no portion of this Agreement shall be modified, waived or amended except in writing, signed by all parties to this Agreement.

7.05  The provisions of this Agreement are intended to be severable.

7.06  The Parties agree that they will sign and deliver any additional documents necessary to accomplish the transactions contemplated by this Agreement.

EARTH ENERGY SYSTEMS INC.        WIND TURBINE INDUSTRIES CORP.

By _____      By _____

Its _____     Its _____

e3854G-4

*Exhibit A*

Σ  1  JACOBS DOCKETS
10/30/86

| DOCKET | TYPE | CODE | DISC | INVENTOR | TITLE | SERIAL NO. | FILED | PATENT NO. | ISSUED | EXPIRE |
|---|---|---|---|---|---|---|---|---|---|---|
| JWE 5000 | US | 5300 | 0 | JACOBS, M. | DUAL FOLD TAIL VANE ASSEMBLY | 473,150 | 3 7 83 | 4,518,312 | 5 21 85 | 5 21 200 |
| JWE 5001 | US | 5300 | 0 | JACOBS, M. | WIND ELECTRIC GENERATION PLANT | 489,951 | 4 29 83 | 4,535,252 | 8 13 85 | 8 13 200 |
| JWE 5002 | US | 5300 | 0 | JACOBS, M. | CLUTCH CONTROLLED POWER PRODUCING | 477,757 | 6 10 74 | 3,891,347 | 6 24 75 | 6 24 199 |
| JWE 5003 | US | 5300 | 0 | JACOBS, M. | WIND ELECTRIC PLANT | 628,952 | 11 5 75 | 4,059,771 | 11 22 77 | 11 22 199 |
| JWE 5004 | US | 5300 | 0 | JACOBS, M. | WIND ELECTRIC PLANT | 645,832 | 12 31 75 | 4,068,131 | 1 10 78 | 1 10 199! |
| JWE 5004 | BR COM | 5300 | 0 | | SEE 5004 & 5005 | PI 7706974 | 10 19 77 | PI 7706974 | 10 19 77 | 10 19 199. |
| JWE 5004 | CA | 5300 | 0 | | | | 10 12 77 | 1,068,609 | 12 25 79 | 12 25 199( |
| JWE 5005 | US | 5300 | 0 | JACOBS, M. | WIND ELECTRIC PLANT | 681,227 | 4 28 76 | 4,088,420 | 5 9 78 | 5 9 199! |
| JWE 5006 | US | 5300 | 0 | JACOBS, M. | WIND ELECTRIC PLANT | 887,373 | 3 16 78 | 4,228,361 | 10 14 80 | 10 14 199? |
| JWE 5007 | US | 5300 | 0 | JACOBS, M. | WIND ELECTRIC PLANT | 921,334 | 7 3 78 | 4,228,362 | 10 14 80 | 10 14 199? |
| JWE 5008 | US | 5300 | 0 | JACOBS, M. | WIND ELECTRIC PLANT | | 1 1 77 | 4,228,363 | 10 14 80 | 10 14 1997 |
| 5008 | GB | 5300 | 0 | | WIND ELECTRIC PLANT | 81/31162 | 10 15 81 | 2,107,794B | 9 11 85 | 10 15 2001 |
| 5008 | IR | 5300 | 0 | | WIND ELECTRIC PLANT | 2423/81 | 10 15 81 | | 0 0 0 | 0 0 0 |
| JWE 5008.1 | CA DIV | 5300 | 0 | | WIND ELECTRIC PLANT | | 10 12 77 | 1,118,685 | 2 23 82 | 2 23 1999 |
| JWE 5008.2 | CA DIV | 5300 | 0 | | WIND ELECTRIC PLANT | | 10 12 77 | 1,140,052 | 1 25 83 | 1 25 2003 |
| JWE 5009 | US | 5300 | 0 | JACOBS, M. | AUTOMATIC STORM PROTECTION | 038,885 | 5 14 79 | 4,297,075 | 10 27 81 | 10 27 1995 |
| JWE 5009 | CA | 5300 | 0 | | | 341,428 | 12 7 79 | 1,136,051 | 11 23 82 | 11 23 1999 |

EXHIBIT B

ASSIGNMENT OF TRADEMARKS AND SERVICE MARKS

WHEREAS, Jacobs Wind Electric Company, a corporation organized and existing under the laws of the State of Delaware (hereinafter referred to as the "Assignor"), has adopted and used in its business a certain trademark shown in U.S. Registration No. 1,206,629 (Supplemental Register) and issued on August 24, 1982 for the mark JACOBS (hereinafter referred to as the "Registration");

WHEREAS, Wind Turbine Industries Corporation, a corporation organized and existing under the laws of the State of Delaware with principal offices at 16801 Industrial Circle Southeast, Prior Lake, Minnesota 55372 (hereinafter referred to as the "Assignee") is desirous of acquiring the entire right, title and interest in and to the trademark, including the goodwill of the business with which the trademark is used, and the Registration therefor.

NOW, THEREFORE, for good and valuable consideration, the receipt and adequacy of which is hereby acknowledged, the Assignor has sold, assigned, transferred and set over, and by these presents does hereby sell, assign, transfer and set over, unto the Assignee, its successors and assigns, the entire right, title and interest in and to the above mentioned marks, and the Registration, together with the goodwill of the business in connection with which the said marks are used, and the right to recover for past infringement of said marks, all subject to pre-existing licenses including licenses to Paul R. Jacobs and to Jacobs Wind Electric Co. Inc., a Florida corporation, to have and to hold the same to the full end of the term or terms of said marks as fully and completely as the same might have been held by the Assignor had this sale and assignment not been made.

Assignee hereby also grants back to Assignor a license to use said JACOBS trademark in connection with commerce involving the goods listed in said Registration (Goods). Assignee agrees to exercise reasonable supervision of the quality of said Goods and Assignor agrees to obey the reasonable directives of Assignee concerning the quality of said Goods.

EARTH ENERGY SYSTEMS, INC.
Formerly Jacobs Wind Electric Company
(Delaware Corporation)

By _____
         (Signature)

Name  R. W. KLEINERT

Title  PRESIDENT

STATE OF MINNESOTA )
                   ) ss
COUNTY OF HENNEPIN )

I, a Notary Public, in and for the State and County aforesaid, do hereby certify that on this _15th_ day of _DECEMBER_, 1986 appeared before me _R. W. KLEINERT_ of Earth Energy Systems, Inc., formerly Jacobs Wind Electric Company, a Delaware corporation, and who did sign the foregoing assignment on behalf of the said corporation.

VINCENT C. FO... EST
NOTARY PUBLIC - MINNESOTA
HENNEPIN COUNTY
My Commission Expires June 28, 1989

_____
Notary Public

WIND TURBINE INDUSTRIES CORPORATION
(Minnesota Corporation)

By _____
         (Signature)

Name  ARCHIE PAVEK

Title  PRESIDENT

STATE OF MINNESOTA )
                   ) ss
COUNTY OF HENNEPIN )

I, a Notary Public, in and for the State and County aforesaid, do hereby certify that on this _15_ day of _DECEMBER_, 1986 appeared before me _ARCHIE PAVEK_ of Wind Turbine Industries Corporation, a Minnesota corporation, and who did sign the foregoing assignment on behalf of the said corporation.

_____
Notary Public

-2-